UNITED STATES DISTRICT COURT FOR  CV  294
THE SOUTHERN DISTRICT OF NEW YORK

---

ELAINE L. CHAO, Secretary of Labor,
United States Department of Labor,

        Plaintiff,

    v.

SCOTT D. SULLIVAN,

        Defendant.

---

Civil Action File No.



COMPLAINT

Plaintiff Elaine L. Chao, Secretary of the United States
Department of Labor (the "Secretary"), alleges:

## JURISDICTION AND VENUE

1.    This action arises under the Employee Retirement
Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§
1001, *et seq.*, and is brought by the Secretary to obtain relief
under Sections 409 and 502 of ERISA, 29 U.S.C. §§ 1109 and 1132,
to redress violations and enforce the provisions of Title I of
ERISA.

2.    This Court has subject matter jurisdiction over this
action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

3.    Venue with respect to this action lies in the United
States District Court for the Southern District of New York,
pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## PARTIES

4.    The Secretary, pursuant to ERISA §§ 502(a)(2) and (5),
29 U.S.C. §§ 1132(a)(2) and (5), has authority to enforce the
provisions of Title I of ERISA by, among other things, the
filing and prosecution of claims against persons who violate
ERISA.

5.    At times relevant to this action, Defendant Scott D.
Sullivan ("Sullivan"), was a trustee of the WorldCom 401(k)
Salary Savings Plan (the "Plan") and, therefore, a named
fiduciary of the Plan pursuant to ERISA § 402(a)(2), 29 U.S.C. §
1102(a)(2), and a fiduciary of the Plan pursuant to ERISA §
3(21), 29 U.S.C. § 1002(21).  In addition to being a trustee of
the Plan, at all times relevant Sullivan also exercised
discretionary authority or discretionary control respecting
management of the Plan and its assets, and had discretionary
authority or discretionary responsibility in the administration
of the Plan.  Therefore, Sullivan is also a fiduciary of the
Plan under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

## GENERAL ALLEGATIONS

6.    At all times relevant, the Plan was an employee
benefit plan as defined by ERISA § 3(3), 29 U.S.C. § 1002(3),
sponsored by WorldCom, Inc. (now doing business as MCI, Inc.).

7.    At all times relevant, the Plan provided participants
with several options for investment of employee contributions

withheld from their salary and the employer matching

contributions made to the Plan on their behalf.  One of the

investment options provided to participants under the Plan was

investment in WorldCom stock.

8.   For 1999, WorldCom stock's closed between a high of

$64.50 per share in June 1999, and a low of $45.29 per share in

October 1999, and ended the year at $56.06 per share on December

31, 1999.  On July 27, 2000, WorldCom common stock closed at $40

per share.  As a result of its 30% shortfall in earnings for the

Third Quarter of 2000, on October 26, 2000, WorldCom's stock

closed at $21.75 per share.  On November 1, 2000, WorldCom

reduced its expectations for revenue growth in the Fourth

Quarter of 2000 and all of 2001.  As a result, WorldCom's stock

price fell by 20.3%, from $23.75 on October 31, 2000, to $18.94

by market close on November 1, 2000.  On November 1 and 2, 2000

the stock's trading volume tripled.

9.   On November 14, 2000, WorldCom disclosed a $50 million

loan to Bernie Ebbers, then WorldCom's CEO, in the Company's

quarterly report for the quarter ended September 30, 2000.

WorldCom subsequently granted Ebbers additional personal loans

and guaranties totaling approximately $408 million.  WorldCom

made further public disclosures as the loan amounts and

guaranties increased.  On December 29, 2000, the stock closed at

$14.06.

10.   In the first half of 2001, WorldCom's stock price
closed between $15 and $20 per share.   In the second half of
2001, WorldCom's stock closed between $13 and $15 per share.   On
January 30, 2002, WorldCom common stock closed at $9.85 and on
February 1, 2002, the stock closed at $9.61.   Later in February,
WorldCom announced that its results for the Fourth Quarter of
2001 were below Wall Street expectations, and reduced its
guidance for 2002.   WorldCom common stock closed at $7.52 per
share on February 28, 2002.

11.   On March 11, 2002 WorldCom issued a press release
disclosing the receipt of an SEC request for the voluntary
production of documents.   On March 12, WorldCom stock closed at
$7.93 per share and more than tripled its trading volume from
the previous weeks.   Also in March and April 2002, Moody's and
Standard & Poors downgraded WorldCom's ratings.   On April 19,
WorldCom closed at $5.98 per share, with a trading volume of
approximately 58 million shares.   On April 22 and 23, the
trading volume of WorldCom stock was 254 million shares and 256
million shares, respectively and the stock closed at $3.41 on
April 23.   On May 9, 2002, Moody's and Standard & Poors again
downgraded WorldCom's ratings, which shifted WorldCom's bonds
from investment grade to junk status.

12.   On June 25, 2002, WorldCom announced that it had
improperly treated more than $3.8 billion in ordinary costs as

4

capital expenditures in violation of generally accepted accounting principles.

13.   On June 26, 2002, NASDAQ suspended trading of WorldCom stock, which was trading at $.83 per share.  On July 1, 2002, trading of WorldCom stock resumed.

14.   On July 21, 2002, WorldCom and substantially all of its direct and indirect subsidiaries filed voluntary petitions under Chapter 11 of the Bankruptcy Code.

15.   In August 2002, WorldCom announced that it had overstated earnings by $3.3 billion for 1999 through the first quarter of 2002.

## ERISA VIOLATIONS

16.   From at least 1999 through his termination in June 2002, Sullivan was WorldCom's Chief Financial Officer and a member of its Board of Directors.

17.   At times relevant, WorldCom engaged in a pattern and practice of misstating its revenues and expenses, and used accounting manipulations to mask its true financial condition from investors in an effort to sustain its stock value.

18.   At times relevant, Sullivan participated in, caused or permitted WorldCom's misstating of its revenues and expenses, and its use of accounting manipulations to hide WorldCom's true financial condition from investors.

19. At all times relevant, Sullivan knew of WorldCom's misstatements and accounting irregularities and failed to correct these misstatements.

20. At all times relevant, Sullivan knew of WorldCom's misstatements and accounting irregularities and failed to inform Plan participants or other Plan fiduciaries of WorldCom's accounting irregularities and misstatement.

21. At all times relevant, Sullivan knew of WorldCom's misstatements and accounting irregularities and misled other Plan fiduciaries and Plan participants about the true financial condition of WorldCom.

22. At all times relevant, Sullivan knew of WorldCom's misstatements and accounting irregularities and failed to consider or undertake any review of the prudence of maintaining WorldCom common stock as an investment option available under the Plan.

23. On March 2, 2004, Sullivan pled guilty to one count of conspiracy to commit securities fraud, to make false filings with the Securities and Exchange Commission ("SEC"), and to falsify books and records of WorldCom, and two counts of securities fraud.

## CLAIM FOR RELIEF

24.  Pursuant to Rule 10(c), Fed. R. Civ. P., the Secretary adopts and incorporates by reference the averments and allegations of paragraphs 1 through 28 inclusive.

25.  At all times relevant, Sullivan knew of WorldCom's misstatements and accounting irregularities and failed to take any action to cause the Plan's fiduciaries to consider or undertake any review of the prudence of maintaining WorldCom common stock as an investment option available under the Plan.

26.  At all times relevant, Sullivan knew of WorldCom's misstatements and accounting irregularities and failed to take any action to prevent Plan participants from investing in WorldCom stock by removing WorldCom common stock as an investment option under the Plan.

27.  Sullivan failed to take any action to protect the Plan's interests and stayed silent when he knew or should have known that WorldCom's publicly-reported financial statements were inaccurate and deceptive, when he knew or should have known that Bernie Ebbers, WorldCom's CEO at the time, was misrepresenting WorldCom's financial condition to the Plan's participants and when he knew or should have known that silence would be harmful to the Plan's participants who would rely upon Ebbers' misrepresentations in deciding whether to buy, hold or sell WorldCom stock.

28.  Sullivan failed to inform other Plan fiduciaries or the Plan's participants and failed to take any action to correct

Ebbers and WorldCom's misrepresentations or to protect the Plans' interests.

29. At all times relevant, Sullivan knew of WorldCom's misstatements and accounting irregularities and failed to take any action to protect the Plan or the Plan's participants and beneficiaries.

30. By his actions and failures to act as described in paragraphs 22 through 34 above, Sullivan:

(a) failed to discharge his duties with respect to the Plan solely in the interest of the participants and beneficiaries of the Plan and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Plan, in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A);

(b) failed to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B); and

(c) failed to act in accordance with the documents and instruments governing the Plan, in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

31. Pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a), Sullivan is jointly and severally liable to restore to the Plan all losses and any profits or financial benefits he received as a result of the violations described herein.

8

## PRAYER FOR RELIEF

**WHEREFORE**, the Secretary of Labor prays that this Court enter an Order:

1. Permanently enjoining Sullivan from exercising, or attempting to exercise, directly or indirectly, any discretionary authority or control with respect to the management or administration of the Plan or any other employee benefit plan subject to the coverage of ERISA, and bar him from providing any services, directly or indirectly, for compensation or otherwise to any such plan; and,

2. Granting such other relief as may be equitable, just and proper.

Dated: January 10, 2007

FOR THE SECRETARY OF LABOR:

HOWARD M. RADZELY
Solicitor of Labor

TIMOTHY D. HAUSER
Associate Solicitor
Plan Benefits Security Division

LESLIE CANFIELD PERLMAN (LC 1967)
Counsel for General Litigation
Plan Benefits Security Division

WAYNE R. BERRY
Senior Trial Attorney

United States Department of Labor
Office of the Solicitor
(Mail Address)
Plan Benefits Security Division
P.O. Box 1914
Washington, D.C. 20013
(Delivery Address)
200 Constitution Ave., N.W.
Room N-4611
Washington, D.C.   20210
Phone:     (202) 693-5600
Fax:       (202) 693-5610